# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

VERONICA JOYCE RAWLS,          )
                               )

      Plaintiff,          )
                               )

v.          )          Case No. 4:21-cv-00763-SGC
                               )

CHRISTINE WORMUTH, Secretary          )
of the Army,          )
                               )
      Defendant.          )

## MEMORANDUM OPINION[1]

This is an employment discrimination case. (Doc. 1). The plaintiff, Veronica Joyce Rawls, claims she was discriminated against because of her race in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e to §2000e-17. (Doc. 25).[2] The defendant, Christine Wormuth, Secretary of the United States Department of the Army (the "Secretary"), has moved for summary judgment. (Doc. 43). The motion is fully briefed and ripe for review. (Docs. 43, 48, 51). For the reasons stated below, the Secretary's motion will be granted.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 13).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249–50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

2

**II. Undisputed Facts and Procedural History**

Rawls is an African American female who, at the time relevant to her amended complaint, was employed as an engineer at the Redstone Arsenal in the Apache Division of the Aviation Engineering Directorate (AED), U.S. Army Aviation and Missile Research Development and Engineering Center (AMRDEC). (Doc. 43-2 at 11; Doc. 43-3 at 11). Her first-level supervisor was Branch Chief Timothy Greges (Caucasian), and her second-level supervisor was Supervisory AED Chief Gregory Jinks (Caucasian). (Doc. 43-3 at 15-16; Doc 43-4 at 6). David Kripps was the AED Deputy Director. (Doc. 43-4 at 13).

In 2016, Greges requested authority to fill both a temporary and a permanent vacancy. (*Id.* at 9). Before announcing the vacancies, Greges drafted a crediting plan and scoring matrix to score potential candidates, as well as interview questions, all of which were approved by Kripps. (Doc. 43-4 at 10, 56; Doc. 43-5 at 1). The crediting plan and scoring matrix included five factors: Airworthiness (30 points); Leadership/Management (30 points); Technical (30 points); Communication (20 points); Maintenance/Sustainment (20 points). (Doc. 43-5 at 1). Greges also selected members to serve on the resume screening panel for both the temporary and permanent positions. (Doc. 43-4 at 16). The panel members were Lead Aerospace Engineer Jung Hua Chang (Asian), Lead Aerospace

Engineer Richard McCann (Caucasian), and Human Factors Engineer Linda Smith (Caucasian). (*Id.* at 19).

## A. The Temporary Position

According to Jennifer Heflin (AMRDEC Human Resource Director, Caucasian), the process for filling a permanent position can be lengthy; consequently, management may internally solicit ("canvass") employees to apply for the position. (Doc. 43-10 at 6, 14). She recommends management use the same criteria for filling both the temporary and permanent vacancies. (*Id.*). Many times, the individual selected for the temporary position is also selected for the permanent position. (*Id.* at 15-16).

On May 10, 2016, Greges emailed AMRDEC employees to gauge interest in the temporary position.[3] (Doc. 43-5 at 3). Thirty-two candidates, including Rawls, were referred as qualified for the position. (*Id.* at 7). The candidates' resumes were provided to the resume screening panel to score against the approved crediting plan. (*Id.* at 7-10). The panel members individually scored the resumes and then met to discuss where to set the cut-off mark for who would be interviewed. (Doc. 43-4 at 20, 32). The panel set the cut-off mark at 120 points and referred the top seven candidates for interview. (*Id.* at 32-33). Because he was required to use the

---

[3] The formal title for the temporary position was Foreign Military Sales (FMS) Independent Technical Evaluator (ITE) Team Leader Temporary NTE 180 Days, Apache Division. (Doc. 43-5 at 4). The pay plan, series, and grade were DB-0861-04, and the position was with the Aviation Engineering Director, Apache Division. (*Id.*).

panel scores, Greges did not review the resumes before the selection decision was made. (Doc. 43-4 at 28-30).

Rawls's resume received a total score of 55, comprised of 30 points for Technical, 10 points for Airworthiness, 10 points for Maintenance/Sustainment, 5 points for Communication, and 0 points for Management/Leadership. (Doc. 43-5 at 9; Doc. 43-4 at 31). With a resume score of 55, Rawls tied for nineteenth; because her score was below the cut-off mark, she was not selected to interview for the temporary position. (Doc. 43-5 at 10; Doc. 43-4 at 31-32). ADE (Caucasian, and the ultimate selectee for the temporary position) received a total resume score of 120, comprised of 30 points for Airworthiness, 30 points for Management/Leadership, 30 points for Technical, 20 points for Maintenance/Sustainment, and 10 points for Communication. (Doc. 43-5 at 10; Doc. 43-4 at 31). Of the seven candidates referred for interviews, four received a resume score of 130, and three received a resume score of 120. (Doc. 43-5 at 10). ADE received the highest score during interviews, and thus Greges selected her for the temporary position. (*Id.* at 16; Doc. 43-4 at 31, 34). Her selection was announced on July 19, 2016. (Doc. 43-5 at 16).

After ADE was selected to fill the temporary position, Greges was provided the screening panel report to facilitate explanatory briefings (called "debriefs") with those not selected for the vacancy. (Doc. 43-4 at 42). Rawls requested a

debrief with Greges. (Doc. 43-4 at 46; Doc. 43-10 at 19). Greges advised her that a panel reviewed and scored the resumes and she did not make the cut to be interviewed. (Doc. 43-4 at 48). He recommended she "read the announcement and canvas to [e]nsure her resume[ is] responsive to the requirements" for the particular position. (*Id.*). He also provided Rawls with her and ADE's scores for each factor. (*Id.*). Heflin, who was present when Greges conducted feedback with Rawls, confirmed Greges discussed with Rawls the scoring criteria and the differences in Rawls' and ADE's scores. (Doc. 43-10 at 19-20). Rawls requested a copy of the crediting plan, but Greges could not provide it because the permanent position vacancy announcement was still open and doing so would give Rawls an unfair advantage. (Doc. 43-3 at 19; Doc. 43-4 at 51).

When there are no active announcements for open positions, Greges will review and assist employees with their resumes, which he offered to do with Rawls several times. (Doc. 43-4 at 51). He does not do that when he has an open announcement because it gives an unfair advantage over other candidates. (*Id.*). Because Greges had an active announcement, Heflin offered to review Rawls's resume. (*Id.*). When Heflin reviewed Rawls's resume, she stated it was "probably the only engineering resume that she could really understand," but she did not give Rawls feedback about potential improvements. (Doc. 43-3 at 46). Instead, she asked others in her office to review Rawls's resume. (Doc. 43-10 at 20-21). At

least one of the individuals, Nancy Salmon, stated there were some discrepancies where she would have given different scores but the differences would not have changed the overall outcome. (*Id.*).

## B. The Permanent Position

On July 26, 2016, a vacancy announcement was posted on USAJOBS for the permanent position of Lead Aerospace Engineer, DB-0861-04, Apache Division, FMS, ITE Team position in AED, Apache Division. (Doc. 43-4 at 36-36; Doc. 43-6 at 3-14). According to the position description (PD) and Vacancy Announcement, the permanent position duties included:

- conduct expert engineering reviews of technical documents associated with the US Army airworthiness qualification requirements;

- lead a team of systems engineers performing technical tasks on aircraft missions equipment development, modification and field support, for fielded aircraft systems and subsystems to assess engineering and airworthiness;

- manage work assignments of technical tasks, consolidate inputs from assigned engineers, functional offices and contractors and reviews technical data to enable airworthiness and system safety determination;

- train, coach, and mentor junior engineers with regard to aviation technical areas;

- brief and write memorandums for both technical and programmatic issues pertaining to leadership and customers.

(Doc. 43-6 at 5). Twenty-two candidates, including Rawls, were qualified and referred for the position. (*Id.* at 15). Greges again selected Chang, McCann, and

Smith to serve on the resume screening panel for the permanent position because they reported working well together and there were a limited number of qualified engineers willing to sit on a resume screening panel. (Doc. 43-4 at 41). Greges's crediting plan for the permanent position included the same five technical factors as the temporary vacancy crediting plan: Airworthiness (30 points); Management/Leadership (30 points); Technical (30 points); Communication (20 points); Maintenance/Sustainment (20 points). (Doc. 43-6 at 2). The scoring matrix also included four other selection considerations, which were not part of the credentialing plan, so were only scored after the interviews were conducted. (*Id.* at 2; Doc. 43-4 at 83).

Chang gave Rawls's resume a total score of 100 and the resume of ADE (who was ultimately selected for the permanent position) a total score of 130:

|  | Airworthiness (30 points) | Leadership/ Management (30 points) | Technical (30 points) | Communication (20 points) | Maintenance/ Sustainment (20 points) |
|---|---|---|---|---|---|
| Rawls | 10 | 30 | 30 | 10 | 20 |
| ADE | 30 | 30 | 30 | 20 | 20 |

(Doc. 43-6 at 49-50). He did not give Rawls full points for Airworthiness and Communication because her resume did not mention the Airworthiness process and did not mention she made presentations to senior leadership. (*Id.*). By contrast, he found ADE mentioned all key wording in her resume and therefore received full points on all criteria. (Doc. 43-6 at 48-49; Doc. 43-7 at 5).

Smith gave Rawls's resume a total score of 100 and ADE's resume a total score of 130:

|  | Airworthiness (30 points) | Leadership/ Management (30 points) | Technical (30 points) | Communication (20 points) | Maintenance/ Sustainment (20 points) |
|---|---|---|---|---|---|
| Rawls | 10 | 30 | 30 | 10 | 20 |
| ADE | 30 | 30 | 30 | 20 | 20 |

(Doc. 43-6 at 53; Doc. 43-8 at 5). Smith determined, for both the temporary and permanent positions, Rawls's resume did not include as many elements in several of the crediting categories as ADE's resume did. (Doc. 43-8 at 6). She found Rawls only provided four elements under Airworthiness, but ADE provided eight elements. (*Id.* at 6). Under Communication, Smith found Rawls only provided three elements compared to the four elements provided by ADE. (*Id.*). She also determined ADE exhibited more knowledge of airworthiness documentation and regulation requirements, more experience as a team lead, and more experience communicating orally to customers, as well as technical groups (*Id.*). Further, Smith stated Rawls's resume did not indicate she possessed six months of team lead experience, but ADE's resume reflected six months of team lead experience. (*Id.* at 5-6). Smith also testified she had seen Rawls's name on documents at work but did not know her race. (Doc. 43-8 at 3).

McCann gave Rawls's resume a total score of 100 and ADE's resume a total score of 130:

|  | Airworthiness (30 points) | Leadership/ Management (20 points) | Technical (30 points) | Communication (20 points) | Maintenance/ Sustainment (20 points) |
|---|---|---|---|---|---|
| Rawls | 10 | 30 | 30 | 10 | 20 |
| ADE | 30 | 30 | 30 | 20 | 20 |

(Doc. 43-6 at 51). He found ADE's resume showed the following knowledge, skills, and abilities that were lacking from Rawls's resume: Army Regulation 70-62, Aeronautical Design Standards, Airworthiness Qualification Substantiation Records, supported assessment of recognized foreign military or civilian airworthiness authorities, understanding of foreign military or civilian airworthiness and regulation requirements, and experience briefing technical and programmatic issues to senior leadership (SES, general officers or equivalent). (Doc. 43-9 at 6-7). McCann found Rawls's resume lacked evidence of the level of experience documented in ADE's resume in (1) knowledge of the airworthiness qualification process and (2) ability to communicate orally and in writing programmatic and technical issues to management and customers. (*Id.*).

The resume screening panel determined the breakpoint to be between 110 and 120 and set the cut-off at 120 or higher for referral to interview. (Doc. 43-6 at 54-58). The top five candidate names and scores were provided to Greges for interview. (Doc. 43-4 at 40-41; Doc. 43-6 at 54-58). With a score of 100, Rawls ranked ninth and was not referred for an interview. (Doc. 43-6 at 57). After conducting interviews and completing the scoring matrix, Greges selected ADE for

the permanent position, effective March 17, 2017, because she had the highest total score of all the candidates. (*Id.* at 56). After ADE was selected to fill the permanent position, Rawls did not have another debrief. (Doc. 43-2 at 38).

## C. Administrative Proceedings and this Action

Rawls filed a formal complaint with the Equal Employment Opportunity Office on January 30, 2017, alleging she was not selected for two temporary and one permanent lead aerospace engineer vacancy in the Apache Division because of her race and age. (Doc. 43-11). An investigation was conducted into her complaint, and after its completion, Rawls requested a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge (AJ). (Doc. 43-14 at 3). The Secretary requested a decision without a hearing. (*Id.*). The AJ ultimately issued a summary decision finding no discrimination, and the EEOC Office of Federal Operations affirmed that decision. (Docs. 43-12, 43-14).

During the administrative proceedings, Rawls testified she (1) had 33 years of leadership experience, (2) had seven years of leadership experience in her duties as a Contracting Officer's Representative, (3) had leadership experience in prior positions, (4) had been a youth leader in her church, and (5) had taken leadership courses. (Doc. 43-3 at 24). She also believed her years of experience in Apache Division and with managing FMS programs made her more qualified than ADE. (*Id.*). Rawls thought race was a factor in her non-selection because she was the

11

only African American in her division (the remaining eight employees being Caucasian) and had "the most experience probably than anybody in my division." (Doc. 43-2 at 51-52; Doc. 43-3 at 34). She also believed she had "significantly more experience than [ADE] in relevant areas such as Aviation Engineering and as a military sales lead wherein she managed a program including 10 countries, rather than the one country [ADE] handled," and she had served as FMS Team Lead for more than eight years. (Doc. 43-2 at 51).

Rawls brought this action in June 2021 by filing a *pro se* complaint against John E. Whitley, the former Secretary of the Army. (Doc. 1). She alleged she was discriminated against on the bases of race and sex when she was not selected for promotions. (*Id.*). Wormuth appeared on behalf of Whitley and moved to dismiss part of Rawls's complaint. (Doc. 14). Specifically, she contended Rawls did not properly exhaust her administrative remedies with respect to the temporary position. Because there was no dispute that Rawls failed to seek administrative review of her non-selection for the temporary position within 45 days after learning she had been rejected, the Secretary's partial motion to dismiss was granted. (Doc. 22).

After securing counsel, Rawls filed an amended complaint. (Doc. 25). Her amended complaint states a single count for race discrimination for her non-selection for the permanent position. (Doc. 25 at 2). She alleges she was not

12

selected for the permanent position because of her race and ADE "possessed plainly inferior qualifications . . . ." (*Id.*).

At her deposition, Rawls conceded no one at the Army has ever made any sort of racially discriminatory comment to her. (Doc. 43-2 at 49-50; Doc. 43-15 at 2). She also admitted she was not aware of Greges making any race-based discriminatory comments. (Doc. 43-2 at 58-59). Specifically, in discussing her responses to Request for Admissions, Rawls answered "no" when asked whether anyone at the Army had ever made any sort of discriminatory comment to her. (*Id.* at 50).

## III. Analysis

Private sector employers may not refuse "to hire . . . or otherwise to discriminate against any individual [ ] <u>because of</u> such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). A private-sector employee must therefore show race was the "but-for" cause of the challenged action. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (explaining § 2000e-2(a)(1)'s "'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation"); *see also Buckley v. Sec'y of Army*, 97 F.4th 784, 792 n.7 (11th Cir. 2024).

Rawls, however, is a federal employee, and her discrimination claims are controlled by the federal sector provision of Title VII. *Babb v. Sec'y, Dep't of*

*Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021) ("*Babb II*"). Under that provision, "[a]ll personnel actions affecting employees . . . in military departments . . . shall be made free from any discrimination based on race . . . ." 42 U.S.C. § 2000e-16(a).

The Eleventh Circuit has concluded "the 'free from any discrimination' language means that personnel actions must be made in 'a way that is not tainted by differential treatment based on' a protected characteristic." *Babb II*, 992 F.3d at 1199. To establish a violation, a plaintiff must show race was "'a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself.'" *Id.* (quoting *Babb v. Wilkie*, 589 U.S. 399, 406 (2020) ("*Babb I*"). Race discrimination cannot play any role in a federal-sector employment decision; otherwise, race discrimination would taint the decision in violation of the statute. *Id.; see also Buckley*, 97 F.4th at 793. A plaintiff does not have to prove the employment decision would have been different if race had not been considered; "a federal employer violates the law if it allows race discrimination to contribute to any personnel action—even if the federal employer would have made precisely the same decision had it not engaged in race discrimination." *Buckley*, 97 F.4th at 793 (citing *Babb II*, 992 F.3d at 1199).

However, even if a plaintiff proves race discrimination tainted the decision-making process, she is not necessarily entitled to damages; any relief must redress

14

the injury caused by the discrimination because "the court cannot place the plaintiff in a better position than she would have been in had the employer not discriminated against her." *Id.* at 794. More specifically, if a plaintiff proves discrimination was a but-for cause of an adverse action, she would be entitled to retrospective relief, like compensatory damages and back pay. *See id.* On the other hand, if she shows only that discrimination tainted the decision-making process but not that it was the but-for cause of the decision, she may be entitled to injunctive or other prospective relief but is not entitled to damages. *See id.*

The Eleventh Circuit has also held the *McDonnell Douglas*[4] framework, often used to analyze private-sector Title VII discrimination claims based on circumstantial evidence, should not be used in federal-sector cases because the burden in private-sector cases (which require a plaintiff to prove but-for causation) is heavier than in federal-sector cases. *Id.* at 794. Instead, a court should consider whether a federal-sector plaintiff has put forth evidence that her race played any part in the defendant's decision-making process. *Id.*

Here, the Secretary argues Rawls has provided only speculation—but no evidence—of differential treatment or discriminatory animus in the hiring process. According to the Secretary, Rawls was subject to the same application and interview requirements as all other applicants, a fact she admitted in her

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

deposition. In response, Rawls argues she was discriminated against because ADE was "preselected" and provided developmental opportunities that Rawls, having more years of experience and being the only African American person in her directorate, should have been provided. She contends "a reasonable jury could easily find that race played a part in the way the subject decision was made" based on the following:

- The panel's reasons for Rawls's scoring are contradicted by the content of her resume, and a jury could conclude her resume describes superior experience;

- Heflin offered no suggestions to improve Rawls's resume, instead calling it great and singularly understandable, and she characterized the scoring matrix process as a "scoring game";

- The panel awarded Rawls zero points out of 30 for leadership when selecting the temporary position but awarded her full points in the same category several weeks later when selecting the permanent position;

- Rawls asked, but was never given, an explanation for the panel's scoring results for the temporary position at a debriefing meeting;

- No one involved in the selection process shared Rawls's race;

- ADE had twenty years less experience than Rawls, and ADE's experience was not relevant to the position; and

- Rawls believes there is a questionable record of failing to hire or promote African Americans because at the time of the selection she was the only African American hired in the entire division and of the eight people who had been promoted to the DB-IV paygrade in the division, all eight were Caucasian.[5]

---

[5] Rawls cites only her deposition testimony to support this claim.

(Doc. 48 at 8-11). Rawls contends, given these facts, she does not need to provide evidence of racially inflammatory language or other race-related conduct. She cites no authority, however, to support this contention.

Much of this evidence relates to the selection for the temporary position rather than the permanent position. As this court previously ruled, however, Rawls failed to exhaust her claims regarding the selection process. (Doc. 22 at 2). Moreover, her amended complaint, filed by counsel, challenges her non-selection for only the permanent position, and she received full points for leadership during the resume screening for the permanent position. (Doc. 25). Accordingly, Rawls's complaints that (1) she was given no points for leadership during the selection for the temporary position and (2) she was not provided sufficient information during the debrief for the temporary position do not relate to the selection process for the position at issue here.[6]

Heflin's comments about the selection process being a "scoring game" and her failure to offer suggestions for resume improvement do not suggest a racial bias. Moreover, there is no evidence Heflin had any input on the resume scoring or any other portion of the selection process.

---

[6] As the Secretary notes, Rawls admitted she did not seek a debriefing after the permanent position selection, which is the only position at issue in the Amended Complaint. (Doc. 43-2 at 37:7-8).

Rawls's allegations about the AED's overall failure to hire or promote African Americans are conclusory, anecdotal, and not sufficiently supported by the record. She cites only her deposition testimony to support this charge but provides no specifics about instances in which African American candidates were rejected based on racial considerations. *See, e.g., Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994) (holding where plaintiff charged that defendant employer had no African American dealers in predominantly white areas, the plaintiff needed to offer "meaningful statistical analysis" regarding how many African Americans applied and were rejected and the evidence of the success rate of equally qualified white applicants).

The remaining arguments—Rawls's belief she was more experienced than ADE and the racial identities of the individuals involved in the selection process— are not sufficient to suggest race discrimination. First, "experience" was not one of the factors included in the resume crediting plan and scoring matrix. Second, as the Secretary notes, ADE had 15 years of engineering experience at the time of her selection for the permanent position. While Rawls may have had more years of experience than ADE, she has not demonstrated ADE's experience was so significantly inferior to her own or that ADE could not have obtained the needed knowledge and skill during those 15 years of experience. *See, e.g., Powell v.*

*Colvin*, No. 2:13-CV-2314-TMP, 2016 WL 1644353, at *7 (N.D. Ala. Apr. 26, 2016).

Most importantly, even if a jury could conclude Rawls's qualifications exceeded ADE's, Rawls must show her race played some role in her non-selection. In *Buckley,* the plaintiff alleged she was subject to race discrimination because "her colleagues (1) diverted white patients from her care; (2) drummed up complaints about her to justify their patient-diversion scheme and other mistreatment; and (3) engaged in other race-based harassing conduct." 97 F.4th at 787. The plaintiff ultimately resigned after being informed she would be removed from federal service because of two substantiated HIPAA violations. *Id.* at 791. The Eleventh Circuit concluded a reasonable jury could find race played a role in the investigation of the HIPAA violations because (1) the plaintiff's supervisor asked whether she could "get" the plaintiff on a HIPAA violation;[7] (2) an alleged race-based remark had been made; and (3) the supervisor knew about, but failed to stop, the alleged patient diversion scheme. *Id.* at 797.

Here, there is no comparable evidence of any racial motive or bias in the selection of ADE over Rawls. The only race-related evidence Rawls cites is (1) the race of the various individuals involved in the selection process and (2) Rawls was

[7] As additional context, for at least one of the HIPAA violations, the first review resulted in a finding that no HIPAA violation occurred; the supervisor then pursued a second level review to obtain a finding that a HIPAA violation had occurred. 97 F.4th at 795.

the only African American in her department. *Buckley* suggests there must be some race-related comments or conduct to show racial bias in decision making. *See id.* The racial identity of the various individuals does not suggest Rawls's race played any part in the selection process for the permanent position. *See, e.g., Coulton v. Univ. of Pennsylvania*, 237 F. App'x 741, 747–48 (3d Cir. 2007) (noting "[t]he mere fact that [supervisors] were of a different race than [plaintiff] ... is insufficient to permit an inference of discrimination" because "[u]nder a contrary rule, federal anti-discrimination laws would be implicated every time an employee suffered an adverse employment action at the hands of a supervisor of a different race").[8]

Here, Rawls has failed to present sufficient evidence suggesting a racial bias in the selection process for the permanent position. Accordingly, a reasonable jury could not conclude the selection process was tainted by considerations of race, and the Secretary is entitled to summary judgment.

---

[8] *See also Burns v. BrandSafway Sols., LLC*, No. CV 1:23-00395-JB-B, 2024 WL 1745045, at *5 (S.D. Ala. Apr. 23, 2024) (mere fact that plaintiff's co-workers were of a different race held insufficient to plausibly suggest intentional race discrimination); *Milledge v. City of Hartford*, No. 3:19-CV-01104 (JAM), 2020 WL 3510813, at *3 (D. Conn. June 29, 2020) ("[A] claim for discrimination is not made plausible simply because the person who has engaged in an adverse action is of a different race than the plaintiff."); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010) ("The facts that Edwards is Caucasian and that the co-workers who were threatening and shunning him were Hispanic or Latino, by themselves, do not state a plausible claim of race discrimination.").

**IV. Conclusion**

For the foregoing reasons, the Secretary is entitled to summary judgment. A separate order will be entered.

**DONE** this 30th day of September, 2024.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE